## SUPERIOR COURT.

THE MAYOR, &c., of NEW-YORK agt. PETER STUYVESANT.
PETER COOPER agt. THE SAME.

Where, before the revised statutes, a deed of trust of real estate was executed to permit the grantor, his heirs and assigns, to receive the rents and profits "until the said hereby granted and conveyed parcel shall be opened as a *public square*," and "after the said parties of the second part, their heirs, or assigns, shall have elected to lay open, and shall actually open the same as and for a public square, then upon the further trust that the same be forever thereafter kept open and appropriated to and for the use of a public square or street, to be called Stuyvesant-square, and to be used for no other use or purpose whatever." And the parties of the second part having subsequently conveyed the same premises upon the same trusts to the corporation of the city of New-York, who proceeded to open the grounds for a public square,

*Held*, that if the legal title was not conveyed to the original grantees, (which was not the case,) or if the legal title was conveyed, and afterward, on the passage of the revised statutes, reverted to the original grantor, still the origi-

Mayor, &c., agt. Stuyvesant, &c.

nal deed of the grantor was a strong if not conclusive evidence of a *dedication* by him, which should cut off the claim of his heirs; and especially so, as by the acts of the heirs in the partition of the property, of which this was a part, they had, by signing a map which had this square laid down upon it, and by making sales of other lands of the estate from it, for a series of years, *ratified* the original conveyance of dedication by the ancestor.

*General Term, October,* 1854.

Present, OAKLEY, C. J., DUER, CAMPBELL, BOSWORTH, and SLOSSON, Justices.

In August, 1825, Nicholas W. Stuyvesant and wife granted to Hall and Reade a triangular lot of land, lying between Seventh-street and Third and Fourth-avenues, in trust, to permit Nicholas W. Stuyvesant, his heirs and assigns, to receive the rents and profits, "until the said hereby granted and conveyed parcel shall be opened as a public square," and "after the said parties of the second part, their heirs or assigns, shall have elected to lay open, and shall actually open the same as and for a public square, then upon the further trust that the same be forever thereafter kept open and appropriated to and for the use of a public square or street, to be called Stuyvesant-square, and to be used for no other use or purpose whatever."

Reade subsequently conveyed the block in question upon the same trusts to Hooker, Hooker to Hall, and Hall to the corporation. The corporation, in 1850, proceeded to take the necessary measures for opening the triangle as a public square. Upon the motion to confirm the report of the commissioners of estimate and assessment, the heirs of Nicholas W. Stuyvesant objected, and they obtained an injunction against the removal of the buildings. They claim, as heirs of Nicholas W. Stuyvesant, to be entitled to the property in question.

An injunction was subsequently granted against them by Hon. Judge EMMET, at special term, enjoining them from disturbing the appropriation of the property to the purposes of a public square. This is an appeal from that order.

ROBERT J. DILLON, *for plaintiffs.*
GEORGE WOOD, *for defendant.*

By the court—CAMPBELL, J.   The deed from Nicholas W. Stuyvesant and wife to Reade and Hall conveyed the legal title. The trusts were good before the revised statutes.   If a valid conveyance was not afterward made by Reade to Hooker, and by Hooker to Hall, and then by Hall to the corporation, then the legal title would remain in the heirs of Reade and Hall, and the heirs of N. W. Stuyvesant would not be adjudged to have taken such title, as the thirty years have not expired.   They, therefore, may be enjoined.   If the deeds from Reade and Hall vested the legal title in the corporation, then there is an end of the matter, and the injunction should issue restraining the defendant.

The question of dedication is one of interest.   If the deed of Nicholas W. Stuyvesant and wife did not convey the legal title to Reade and Hall, or if such legal title was conveyed, and afterward, on the passage of the revised statutes, reverted to Stuyvesant, still the original deed of Stuyvesant is a very strong if not conclusive evidence of the intent of the grantors to dedicate or devote the property to public use.   Mr. Stuyvesant lived eight years after the execution, delivery, and record of that deed, and several years after the passage of the revised statutes.   It was executed simultaneously with other conveyances of large amounts of property by the same grantors to the same grantees.   In the partition of the property of N. W. Stuyvesant, after his death, among his heirs, the piece of land in suit was laid down as an open space where two principal streets unite, and such streets, and their union at such open space, are laid down on the partition map.   This map was signed by all the heirs in various places, and sealed, and was manifestly an act of great deliberation.   The subsequent sales by the heirs appear to have been made by this map, which is referred to generally in their conveyances, and formed a part of them. This partition map was made nineteen years ago, and it seems to me should be considered strong, if not conclusive evidence of ratification of the deed of the ancestor, if not of dedication on the part of the heirs themselves.

In each aspect of the case, therefore, we see that there should

be a perpetual injunction. If the deeds of Reade and Hall did not convey the legal title, then such title would remain in their heirs. If the corporation became vested by reason of the conveyances from Reade and Hall, then such public use of the property has been ordered by them as was designed by the original grantors, and as specified in such original deed. If neither of the propositions be correct, and the legal title vested in the heirs on the death of the ancestor, then we think it very manifest that they devoted or dedicated the property themselves to the public use.

We think, also, that the defendant is precluded by the proceedings in the supreme court, taken for opening this place as a public square.

The judgment of the special term is affirmed, with costs.